# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| Becky Kirk, Perry Ayoob, and Dawn Karzenoski, as representatives of a class of similarly situated persons, and on behalf of the CHS/Community Health Systems, Inc. Retirement Savings Plan,<br><br>               Plaintiffs,<br><br>v.<br><br>Retirement Committee of CHS/Community Health Systems, Inc., CHS/Community Health Systems, Inc., John and Jane Does 1-20, Principal Life Insurance Company, Principal Management Corporation, and Principal Global Investors, LLC,<br><br>               Defendants. | Case No. 3:19-cv-00689<br><br>Judge William L. Campbell, Jr.<br><br>Magistrate Judge Barbara D. Holmes |

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
BETWEEN PLAINTIFFS AND DEFENDANTS RETIREMENT
COMMITTEE OF CHS/ COMMUNITY HEALTH SYSTEMS, INC.
AND CHS/ COMMUNITY HEALTH SYSTEMS, INC.**

This CLASS ACTION SETTLEMENT AGREEMENT is entered into by and between Plaintiffs, as defined in § 1.32 below, on the one hand, and the Settling Defendants, as defined in § 1.47 below, on the other. Capitalized terms and phrases have the meanings provided in § 1 below or as specified elsewhere in this Settlement Agreement.

**Section 1        DEFINITIONS**

1.1    "*Action*" shall mean:  *Kirk, et al. v. Retirement Committee of CHS/Community Health Systems, Inc., et al.*, No. 3:19-cv-00689, an action pending in the United States District Court for the Middle District of Tennessee.

1.2    "*Active Participant*" means any Settlement Class Member who had a Plan account balance greater than $0.00 during the Class Period and who, as of the date of the Preliminary Approval Order, has a Plan account with a balance greater than $0.00 and is eligible to make contributions to the account.

1.3    "*Administrative Expenses*" means the administrative expenses set forth in § 8.2.

1.4    "*Alternate Payee*" means a person, other than an Active Participant, Inactive Participant, Former Participant, or Beneficiary, who is entitled to a benefit under the

Plan as a result of a Qualified Domestic Relations Order.

1.5 "*Bar Order*" means the bar order as set forth in § 3.3.4(b)(viii).

1.6 "*Barred Claims*" means (i) Claims asserted or that could have been asserted against the Settling Defendants' Releasees for indemnity and/or contribution and/or third-party Claims of any type arising from this Action, or (ii) any other Claims in this litigation released pursuant to this Agreement.

1.7 "*Barred Persons*" means Plaintiffs, the Non-Settling Defendants, their insurers, and each of their Successors-In-Interest.

1.8 "*CHS/*" means CHS/Community Health Systems, Inc.

1.9 "*Claims*" means any and all manner of claims, actions, causes of actions, potential actions, suits, arbitrations, controversies, costs, damages, losses, obligations, liabilities, judgments, and demands whatsoever, known or unknown, suspected or unsuspected, accrued or unaccrued, whether class, individual, or otherwise, arising under the laws, regulations, or common law of the United States of America, any state or political subdivision thereof, or any foreign country or jurisdiction, in law, in contract, or in equity, and regardless of legal theory.

1.10 "*Class Counsel*" means Nichols Kaster PLLP and Barrett Johnston Martin & Garrison, LLC.

1.11 "*Class Notice*" means the form of the Court-approved notice of this Settlement Agreement that is disseminated to Settlement Class Members. Class Counsel shall propose that the Court approve the form of notice attached as Exhibit A hereto, and shall propose that the Class Notice be sent via First-Class U.S. Mail.

1.12 "*Class Period*" means August 8, 2013 through the date of preliminary approval, as defined in § 3.3.1 below.

1.13 "*Complaint*" means the Class Action Complaint filed in the Action on August 8, 2019.

1.14 "*Disputed Investments*" means the suite of Retirement Target Date separate accounts managed by Principal and the standalone Principal Large Cap S&P 500 Index fund, Principal MidCap S&P 400 Index fund, and Principal SmallCap S&P 600 Index fund offered in the Plan.

    1.14.1 "*Group A Investments*" mean the standalone Principal Large Cap S&P 500 Index fund, Principal MidCap S&P 400 Index fund, and Principal SmallCap S&P 600 Index fund offered in the Plan.

    1.14.2 "*Group B Investments*" means the suite of Retirement Target Date separate accounts managed by Principal offered in the Plan.

1.15 "*District Court*" means the United States District Court for the Middle District of

Tennessee.

1.16 "*Effective Date*" or "*Effective Date of Settlement*" means the date on which all of the conditions to settlement set forth in § 3 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final as defined in § 1.21.

1.17 "*Entitlement Amount*" means that portion of the Net Settlement Amount payable to an individual Settlement Class Member, or to the Plan on behalf of an individual Settlement Class Member, as determined according to the procedures described in § 8 herein.

1.18 "*ERISA*" means the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.19 "*Escrow Agent*" means the party to be retained by Class Counsel that is responsible for holding, in escrow, the funds in the Settlement Fund.

1.20 "*Fairness Hearing*" shall have the meaning provided in § 3.3.4.

1.21 "*Final*" means, with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.22 "*Final Approval Motion*" shall have the meaning provided in § 3.3.4.

1.23 "*Final Approval Order*" shall have the meaning provided in § 3.3.4.

1.24 "*Former Participant*" means any Settlement Class Member who had a Plan account with a fund balance greater than $0.00 during the Class Period but who does not have a Plan account with a balance greater than $0.00 in any investment option as of the date of the Preliminary Approval Order.

1.25 "*Gross Settlement Amount*" means the sum of five hundred and eighty thousand U.S. dollars (USD $580,000.00). The Gross Settlement Amount shall be the full and sole monetary payment to the Plaintiffs, Settlement Class Members, and Class Counsel made on behalf of the Settling Defendants in connection with this Settlement Agreement

1.26 "*Inactive Participant*" means any Settlement Class Member who had a Plan account balance greater than $0.00 during the Class Period and who, as of the date of the Preliminary Approval Order, has a Plan account with a balance greater than $0.00 and is ineligible to make contributions to the account.

1.27 "*Independent Fiduciary*" means the independent fiduciary selected and retained by CHS/, pursuant to Prohibited Transaction Exemption 2003-39, to review and consider the Settlement on behalf of the Plan and to determine whether to approve the release of

claims herein, as more fully described in § 3.4 below.

1.28  "*Net Settlement Fund*" shall have the meaning provided in § 8.3.

1.29  "*Non-Settling Defendants*" means Principal Life Insurance Company, Principal Management Corporation, and Principal Global Investors, LLC.

1.30  "*Person*" means an individual, partnership, corporation or any other form of organization.

1.31  "*Parties*" means Plaintiffs, Settling Defendants, and Non-Settling Defendants as defined herein.

1.31.1  "*Settling Parties*" means Plaintiffs and Settling Defendants as defined herein.

1.32  "*Plaintiffs*" means Plaintiffs Becky Kirk, Perry Ayoob, and Dawn Karzenoski.

1.33  "*Plan*" means the Retirement Savings Plan for CHS/Community Health Systems, Inc. (EIN: 76-0137985; PN: 004) and its predecessor plans, including:  (a) the Rockwood Clinic 401(k) Plan (EIN: 91-1352993, PN: 001); (b) the Health Management Associates, Inc. Retirement Savings Plan (EIN: 61-0963645; PN: 002); (c) the Mat-Su Regional Medical Center 401(k) Plan (EIN: 62-1762371; PN: 001); (d) the CHS/Community Health Systems, Inc. 401(k) Plan (EIN: 76-137985; PN 001), insofar as participant accounts in the plans listed in (a) through (d) were transferred to the Retirement Savings Plan, or would have been transferred to the Retirement Savings Plan had the participant not terminated participation in the plan prior to the transfer to the Retirement Savings Plan.[1]

1.34  "*Plan of Allocation*" shall have the meaning provided in § 8.3.

1.35  "*Preliminary Approval Motion*" shall have the meaning provided in § 3.3.1.

1.36  "*Preliminary Approval Order*" shall have the meaning provided in § 3.3.1.

1.37  "*Plaintiffs' Released Claims*" means, subject to the exclusions in § 4.5, any and all actual or potential Claims related to the Disputed Investments that were brought or could have been brought as of the date of the Settlement Agreement by any Settlement Class Member against the Settling Defendants' Releasees, including Claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification or any other type or nature of legal or equitable relief.  Plaintiffs, on behalf of themselves and on behalf of the Settlement Class and the Plan, hereby expressly waive and relinquish, to the fullest extent

---

[1] At different times, the accounts of certain participants in the Plan, the Health Management Associates, Inc. Retirement Savings Plan, the Mat-Su Regional Medical Center 401(k) Plan and/or the CHS/Community Health Systems, Inc. 401(k) Plan were transferred to the CHS/Community Health Systems, Inc. Standard 401(k) Plan.  This definition is not intended to capture any such transferred participants accounts.

permitted by law and equity, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

1.38   "*Plaintiffs' Releasees*" means Plaintiffs and any and all of their heirs, estates, legal representatives, or assigns.

1.39   "*Qualified Domestic Relation Order*" means a judgment, decree, or order (including the approval of a property settlement) that is made pursuant to state domestic relations law (including community property law) and that relates to the provision of child support, alimony payments, or marital property rights for the benefit of a spouse, former spouse, child, or other dependent of an Active Participant, Inactive Participant, or Former Participant and which has been determined qualified pursuant to the Plan's procedures.

1.40   "*Representatives*" means representatives, attorneys, agents, directors, officers, employees, insurers and reinsurers.

1.41   "*Recordkeeper*" means Principal Life Insurance Company or any other entity that succeeds Principal Life Insurance Company as recordkeeper for the Plan.

1.42   "*Settled Claims*" means the claims against the Settling Defendants in the Action.

1.43   "*Settlement*" means the settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

1.44   "*Settlement Administrator*" means the person or firm to be retained by Class Counsel (subject to the Settling Defendants' reasonable approval), to administer the Settlement, including providing Class Notice, maintaining the settlement website and related telephone support, and distributing the Net Settlement Fund to Settlement Class Members.

1.45   "*Settlement Agreement*" or "*Agreement*" means this Class Action Settlement Agreement entered into by and between Plaintiffs and the Settling Defendants as defined in §1.47.

1.46   "*Settlement Class*" or "*Settlement Class Members*" shall refer to all current and former participants in the Plan who had an account balance greater than $0.00 in the Disputed Investments at any point during the Class Period and their beneficiaries.

1.47   "*Settling Defendants*" means the Retirement Committee of CHS/Community Health Systems, Inc. and CHS/Community Health Systems, Inc.

1.48   "*Settling Defendants' Released Claims*" means any and all actual or potential Claims that the Settling Defendants asserted, or could have asserted, against the Plaintiffs' Releasees and Class Counsel that arise out of or relate in any way to the institution, prosecution, or settlement of the Action, except for Claims relating to the enforcement

of this Agreement.

1.49 "*Settling Defendants' Releasees*" means the Settling Defendants named in the Complaint and, except as provided in § 1.49.1, any and all of their related entities, including, without limitation, any and all of their past or present parents, subsidiaries, affiliates, predecessors, successors, or Successors-In-Interest, or any and all entities that are considered to be a single employer with CHS/ under Internal Revenue Code § 414, 26 U.S.C. § 414 as well as any and all of its or their current or former officers, directors, employees, associates, members of their immediate families, agents, or other persons acting on their behalf, underwriters, insurers, reinsurers, attorneys, advisors, financial advisors, publicists, independent certified public accountants, auditors, accountants, assigns, creditors, administrators, heirs, estates, or legal representatives.

1.49.1 "*Settling Defendants' Releasees*" shall not include the Non-Settling Defendants.

1.50 "*Settlement Fund*" means a Qualified Settlement Fund established and identified by the Escrow Agent that is comprised of the Gross Settlement Amount as described in § 8.1.

1.51 "*Successor-In-Interest*" means a Person's estate, legal representatives, heirs, successors or assigns, and any other Person who can make a legal claim by or through such Person.

## Section 2    RECITALS

2.1 Plaintiffs brought this Action against the Settling Defendants and Non-Settling Defendants on August 8, 2019.

2.2 In the Complaint, Plaintiffs alleged two claims pursuant to 29 U.S.C. § 1132, ERISA § 502 against the Settling Defendants. Plaintiffs alleged that the Settling Defendants breached their fiduciary duties of prudence and loyalty by retaining Principal-affiliated investments as standalone investment options in the Plan despite the availability of other less expensive and better performing options. Plaintiffs also alleged that the Settling Defendants breached their duty to monitor the Non-Settling Defendants' management of the Plan's target date fund options, including management of the underlying funds in the target date funds. The Complaint seeks equitable and compensatory relief pursuant to ERISA §§ 409, 502(a)(2) and 502(a)(3), specifically the restoration by Settling Defendants to the Plan of losses allegedly caused by them through their alleged breaches of fiduciary duties, and an order enjoining further violations. The Complaint also seeks costs and attorneys' fees pursuant to ERISA § 502(g) and the common fund doctrine.

2.3 Plaintiffs brought this Action on behalf of a proposed class of participants and beneficiaries in the Plan. (Dkt. No. 1, ¶ 110.)

2.4 The Settling Defendants and Non-Settling Defendants filed separate Motions to Dismiss the Complaint (Dkt. Nos. 49 & 51) on October 18, 2019. Those motions were pending when the District Court stayed the Action pending settlement. (Dkt. No. 92.)

2.5 The Parties appeared for an initial case management conference on November 1, 2019. The District Court subsequently entered a Case Management Order requiring discovery

while the Motions to Dismiss were pending.  (Dkt. No. 58.)

2.6     Between November 2019 and January 2020, while the Motions to Dismiss were being drafted and were pending, Settling Defendants and Non-Settling Defendants produced core documents relevant to Plaintiffs' Complaint.  (Dkt. No. 58, ¶ G.)  From March 2020 to the present, the Parties have served and responded to written discovery.  The Parties met and conferred numerous times regarding discovery of Electronically Stored Information ("ESI") and reached an agreement for the methodology of collecting and reviewing the same.  Plaintiffs have produced more than 2,800 pages of documents, and the Settling and Non-Settling Defendants have collectively produced tens of thousands of pages of ESI, including Plan committee and investment sub-committee meeting minutes and meeting materials, information made available to the Plan's participants concerning matters that included Plan's investment options and expenses, and reports and advice that consultants provided in connection with the operation, costs and investment options of the Plan.

2.7     Pursuant to the Initial Case Management Order (Dkt. No. 58, ¶ F), in June 2020, the Settling Parties engaged in settlement negotiations in an effort to reach an amicable case resolution.  (Dkt. No. 88.)  After several weeks of negotiations conducted through their respective counsel, the Settling Parties reached a settlement in principle with respect to Plaintiffs' putative class action claims against the Settling Defendants.

2.8     The Parties filed a joint motion to stay the Action pending settlement on July 27, 2020.  (Dkt. No. 91.)  The District Court granted the motion and stayed the Action effective July 29, 2020 for a period of 45 days.  (Dkt. No. 92.)  The Parties filed a joint motion to continue the stay for an additional 30 days on September 16, 2020, which the Court granted on September 17, 2020.  (Dkt. Nos. 94 & 95.)  The Parties filed a further joint motion to continue the stay for an additional 45 days on October 19, 2020, which the Court granted on October 20, 2020.  (Dkt. Nos. 97 & 98.)

2.9     The Settling Defendants deny each and every allegation of wrongdoing made in the Complaint and contend that they have no liability in the Action.  The Settling Defendants specifically deny the allegations that they breached any fiduciary duty or any other provisions of ERISA in connection with the administration of the Plan, the fees or expenses incurred by the Plan, or the investments in the Plan, at any time, and further deny that they in any way failed to act prudently or loyally as to the Plan's participants and beneficiaries.

2.10    Class Counsel has conducted a thorough investigation into the facts, circumstances, and legal issues associated with the Action.  This investigation has included: (i) researching the applicable law with respect to the claims asserted and the potential defenses thereto; and (ii) analyzing numerous documents concerning the Plan and the administration of the Plan, including the documents produced by the Settling Defendants and Non-Settling Defendants in this Action.

2.11    The Settling Defendants' counsel has conducted a thorough investigation into Plaintiffs' claims, the underlying events and transactions alleged in the Complaint, and the

operation and administration of the Plan. The Settling Defendants' counsel has reviewed numerous documents and made a thorough study of the legal principles applicable to Plaintiffs' actual and potential claims and defenses to those claims in the Action.

2.12 Based on their investigation of the merits of this Action, the course of the litigation to date, and their knowledge and experience with respect to similar ERISA litigations, Class Counsel believe that the Settlement will provide substantial benefits to the Settlement Class. When the benefits conferred by the Settlement are weighed against the attendant risks of continuing to prosecute the Action, Class Counsel believe that the Settlement represents a reasonable and fair resolution of the Claims of the Settlement Class. In reaching this conclusion, Class Counsel have considered, among other things, the risks of litigation (including the risks of establishing both liability and any loss to the Plans), the time necessary to achieve a final resolution through litigation and any appeals, the complexity of the claims set forth in the Complaint, the ability of the Settling Defendants to withstand judgment, and the benefits accruing to the Plans' participants under the Settlement.

2.13 Although the Settling Defendants continue to deny all liability with respect to the claims alleged in the Complaint, they nevertheless consider it desirable that any and all possible controversies and disputes arising out of or during the Class Period that relate to the matters, transactions, and occurrences referenced in the Complaint be conclusively resolved and terminated on the terms and conditions set forth below. The Settlement and the attendant final dismissal of the Settled Claims will avoid the substantial expense, inconvenience, and risk of continued litigation and will bring Plaintiffs' claims and potential Claims against the Settling Defendants to an end.

2.14 The Settling Parties have reached the Settlement, by and through their respective undersigned counsel, on the terms and conditions set forth in this Agreement.

## Section 3    CONDITIONS    PRECEDENT    TO    EFFECTIVENESS    OF    THE SETTLEMENT

3.1 *Effectiveness of This Settlement Agreement*.   This Settlement Agreement shall not become binding unless and until each and every one of the following conditions in §§ 3.2 through 3.8 shall have been satisfied.

3.2 *Stay of the Action*. The Court's October 20, 2020 Order staying the Action in its entirety (Dkt. No. 98), and a subsequent order continuing the stay of this Action in its entirety, shall remain in effect, except as to the Settling Defendants' obligations in connection with this Agreement.

3.3 *District Court Approval*. The Settlement contemplated under this Settlement Agreement shall have been approved by the District Court, as provided for in this § 3.3. The Settling Parties agree jointly to recommend to the District Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder. The Settling Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by

order of the District Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

3.3.1 *Preliminary Approval Motion and Class Notice*.  The District Court shall have approved the preliminary approval motion to be filed by Plaintiffs by entering the Preliminary Approval Order:

(a) Preliminarily approving this Settlement Agreement;

(b) Approving the form and manner of the Class Notice; and

(c) Finding that: (i) the proposed form of Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement, (B) gives notice to the Settlement Class of the time and place of the hearing of the motion for final approval of this Settlement Agreement, and (C) describes how the recipients of the Class Notice may object to approval of this Settlement Agreement; and (ii) the proposed manner of communicating the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances.

3.3.2 *Settlement Class Certification*.

(a) The District Court shall have certified a non-opt out class for settlement purposes only pursuant to Federal Rule of Civil Procedure 23(b)(1), with Plaintiffs as the named Settlement Class representatives, Nichols Kaster PLLP and Barrett Johnston Martin & Garrison, LLC as Class Counsel, and with the Settlement Class as defined in § 1.46.

(b) The Settling Parties stipulate and agree to certification of the Settlement Class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1), on the foregoing terms.  If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes revert to its status as of the day immediately prior to the date on which the District Court stayed this matter pending settlement.

3.3.3 *Issuance of Class Notice*.  No later than forty (40) business days after the entry of the Preliminary Approval Order, or by such other deadline as specified by the Court, the Settlement Administrator will cause a Class Notice of the Preliminary Approval Order to be delivered to the Settlement Class in the form and manner approved by the District Court.  The Settlement Administrator will also provide notice by publication of the Settlement Agreement and Class Notice (and any other documents mutually agreed to by the Settling Parties) on a Settlement website established by the Settlement Administrator.  The Settlement website shall also include a toll-free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator directly.

The Settling Defendants shall provide reasonable cooperation with respect to the Class Notice, including by: (i) conferring in good faith with Class Counsel on the form of the Class Notice, (ii) providing data sufficient to identify each Settlement Class Member, and (iii) providing or causing to be provided in electronic form each Settlement Class Member's last known address and participant status (*i.e.*, current or former) as soon as practicable but no later than thirty (30) business days after entry of the Preliminary Approval Order, to the extent that such information is readily available using commercially reasonable methods within the aforementioned timeframe.

### 3.3.4 *Final Approval Motion and the Fairness Hearing*.

(a) Plaintiffs shall file the Final Approval Motion seeking entry of the Final Approval Order no later than 14 days prior to the Fairness Hearing.

(b) On the date set by the District Court in its Preliminary Approval Order, the Parties shall participate in the Fairness Hearing during or after which the District Court will enter the Final Approval Order that:

    (i) Approves the Settlement and adjudges the terms thereof to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

    (ii) Certifies the Settlement Class as a non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23;

    (iii) Determines that the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to the Settlement Class;

    (iv) Approves the Plan of Allocation;

    (v) Dismisses the Action with prejudice as to the Settling Defendants and operates to extinguish, discharge, and release any and all Plaintiffs' Released Claims against Settling Defendants' Releasees and Settling Defendants' Released Claims against Plaintiffs' Releasees, without costs except as herein provided, said dismissal being subject only to compliance by the Plaintiffs and Settling Defendants with the terms of this Agreement and any order of the District Court concerning this Agreement;

    (vi) Bars and enjoins the Settling Parties from the institution and prosecution, either directly or indirectly, of any other actions in any court asserting any and all of Plaintiffs' Released Claims against Settling Defendants' Releasees and Settling Defendants' Released Claims against Plaintiffs' Releasees;

(vii) Permanently enjoins Plaintiffs, Settlement Class Members, and the Plan from asserting, commencing, prosecuting or continuing, either directly, individually, representatively, derivatively or in any other capacity, any other actions in any court asserting such Plaintiffs' Released Claims or from receiving any additional recovery or relief from any of Settling Defendants' Releasees with respect thereto; and

(viii) Enters the Bar Order under which:

(1) All Barred Persons and any Person purporting to act on their behalf or asserting any Claim under or through them are barred, enjoined, and restrained from commencing, prosecuting, or asserting any Barred Claims against the Settling Defendants' Releasees in any forum, action or proceeding of any kind. All such Barred Claims shall be extinguished, discharged, satisfied, and unenforceable.

(2) Any judgment entered against the Barred Persons in the Action, whether entered in the course of the litigation or in connection with a settlement between any Barred Persons and Plaintiffs, will not be subject to a judgment reduction.

(3) Subject to Paragraph 4.5 of the Settlement Agreement, Plaintiffs' Releasees are barred, enjoined, and restrained from commencing, prosecuting or asserting any Claims against any other Person or entity (including other Plaintiffs' Releasees), where the claim is or arises out of the Plaintiffs' Released Claims, including any claim in which any Plaintiffs' Releasees seeks to recover from any Person or entity (including other Plaintiffs' Releasees): (i) any amounts any Settling Defendants' Releasees have or might become liable to pay to the Settlement Class or any Settlement Class member; and/or (ii) any costs, expense, or attorneys' fees from defending any claim by any Settlement Class Member. All such Claims shall be extinguished, discharged, satisfied and unenforceable.

(c) The Settling Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order.

3.4 *Independent Fiduciary Approval*. The Independent Fiduciary shall have: (i) approved the Settlement in writing and given a release in its capacity as a fiduciary of the Plan and for and on behalf of the Plan coextensive with the release from the Plaintiffs and the Settlement Class Members; and (ii) taken all such other actions necessary to authorize the Settlement in accordance with Prohibited Transaction Class Exemption 2003-39. The Independent Fiduciary shall notify the Settling Defendants and Class Counsel of its

determination in writing, which notification shall be delivered no later than thirty (30) calendar days before the Fairness Hearing.

3.5 *Finality of Final Approval Order*. The Final Approval Order shall have become Final, as defined in § 1.21 of this Settlement Agreement.

3.6 *Compliance with the Class Action Fairness Act*. The District Court shall have determined that the Settling Defendants complied with the Class Action Fairness Act of 2005 ("CAFA") and its notice requirements.

3.7 *Dismissal of Action*. The Action shall have been dismissed with prejudice as against the Settling Defendants on the Effective Date of Settlement.

3.8 *No Termination*. The Settlement shall not have terminated pursuant to § 10 below.

3.9 *Materiality of Settlement Agreement Conditions*. The Settling Parties expressly acknowledge that the effectiveness of this Settlement Agreement is specifically conditioned upon the occurrence of each and every one of the foregoing conditions precedent prior to the Effective Date of Settlement, and that a failure of any condition set forth in §§ 3.2 through 3.8 at any time prior to the Effective Date of Settlement shall make this Settlement Agreement, and any obligation to pay the amounts specified in § 8.1, or any portion thereof, voidable by any of the Settling Parties.

3.10 *Establishment of Effective Date of Settlement*. The Settlement shall be effective on the Effective Date as defined in § 1.16 of this Settlement Agreement. The pendency of unresolved issues regarding the Plan of Allocation and Administrative Expenses shall not affect the finality of the Settlement.

## Section 4    RELEASE AND COVENANT NOT TO SUE

4.1 *Release of the Settling Defendants' Releasees*. Plaintiffs, the Settlement Class Members, and the Plan may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of Plaintiffs' Released Claims with respect to any Settling Defendants' Releasees, but subject to §§ 4.5 and 10, upon the Effective Date of Settlement, Plaintiffs, the Settlement Class, and the Plan (by and through the Independent Fiduciary) absolutely and unconditionally release and forever discharge the Settling Defendants' Releasees from any and all Plaintiffs' Released Claims that Plaintiffs, the Settlement Class Members, or the Plan directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have.

4.2 *Release by the Settling Defendants*. Subject to §§ 4.5 and 10, upon the Effective Date of Settlement, the Settling Defendants absolutely and unconditionally release and forever discharge Plaintiffs' Releasees and Class Counsel from Settling Defendants' Released Claims.

4.3 *Covenant Not to Sue by Plaintiffs*. Subject to §§ 4.5 and 10, upon the Effective Date of Settlement, Plaintiffs, the Settlement Class Members, and the Plan, covenant and agree:

(a) not to file against any Settling Defendants' Releasee any of the Plaintiffs' Released Claims, or re-file any Claim brought in this Action; and (b) that the foregoing covenant and agreement shall be a complete defense to any such Claims against any of the Settling Defendants' Releasees.

4.4    *Covenant Not to Sue by the Settling Defendants*.  Subject to §§ 4.5 and 10, upon the Effective Date of Settlement, the Settling Defendants covenant and agree (a) not to file against any Plaintiffs' Releasees and Class Counsel any of the Settling Defendants' Released Claims; and (b) that the foregoing covenant and agreement shall be a complete defense to any such Claims against any of the Plaintiffs' Releasees.

4.5    *Claims Not Released*.  This Agreement does not in any way bar, limit, waive, or release any right by Plaintiffs to assert and/or recover any moneys resulting from (a) any individual Claim for individual vested benefits brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) that are otherwise due under the terms of the Plan, (b) any Claims asserted by Plaintiffs against the Non-Settling Defendants in the Action, or (c) any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement.

## Section 5    COVENANTS

Named Plaintiffs, Settlement Class Members, and the Plan hereby covenant as follows:

5.1    *Taxation of Settlement Payments*.  Plaintiffs, Class Counsel, the Settling Defendants, the Plan, the Settling Defendants' Releasees and any of their Representatives or Successors-In-Interest shall not have any responsibility for any taxes that may be due on the Gross or Net Settlement Amount, or on any funds that the Plan or Settlement Class Members may receive in connection with this Settlement except that Plaintiffs are responsible for any individual tax liabilities related to any payments received in connection with the Settlement.  Nothing herein shall constitute an admission or representation that any taxes will or will not be due on such payments or any allocation or disbursement therefrom.

5.2    *Non-Disparagement*.  The Settling Parties, their counsel, and their agents shall refrain from making derogatory or disparaging comments as to Plaintiffs, Class Counsel, any Released Party, Settling Defendants, the Plan, and/or Settling Defendants' counsel, except that Plaintiffs and Class Counsel shall not be limited in the factual evidence or legal arguments they may present in this Action.

5.3    *Existence of Genuine Controversy*.  Class Counsel agrees to provide, only if requested by the Independent Fiduciary, without any charge associated therewith, a legal opinion regarding the existence of a "genuine dispute" regarding the Plan, as described in Section II(a) of Prohibited Transaction Exemption 2003-39, in order to assist the Independent

Fiduciary with its review and authorization of the proposed Settlement.

## Section 6    REPRESENTATIONS AND WARRANTIES

6.1    *Settling Parties' Representations and Warranties.*

6.1.1    Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any of Plaintiffs' Released Claims against any Settling Defendants' Releasee, and further covenant that they will not assign or otherwise transfer any interest in Plaintiffs' Released Claims.

6.1.2    Plaintiffs represent and warrant that they shall have no surviving claim or cause of action against any of the Settling Defendants' Releasees for Plaintiffs' Released Claims against them.

6.1.3    The Settling Parties, and each of them, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and Claims hereunder and regarding all matters which relate in any way to the subject matter hereof; except as expressly stated herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements or omissions pertaining to any of the foregoing matters by any other Settling Party or its Representatives; and each Settling Party assumes the risk of and unconditionally waives any and all Claims or defenses arising out of any alleged mistake as to facts or law.

6.1.4    The Settling Parties, and each of them, represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts and law pertaining to this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is executed freely by each Person executing it on behalf of each of the Settling Parties.

6.2    *Signatories' Representations and Warranties.*  Each individual executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Settling Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal which such individual represents or purports to represent.

## Section 7    NO ADMISSION OF LIABILITY

7.1    This Settlement is not evidence of any liability of any type.  The provisions contained in this Agreement and all negotiations, statements and proceedings in connection therewith shall not be deemed a presumption, a concession, or an admission by Settling Defendants of any fault, liability, or wrongdoing as to any fact or Claims that were or could have

been alleged or asserted in the Action or any other actions or proceedings and shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in these or any other actions or proceedings, whether civil, criminal or administrative, except in a proceeding to enforce the terms or conditions of this Settlement Agreement. Settling Defendants have denied and continue to deny each and every claim alleged in the Action. Furthermore, this Settlement Agreement shall not be construed as or received in evidence as an admission, concession, or presumption against any Plaintiff or any of the Settlement Class Members that any of their Claims are without merit, or that any defenses asserted by Settling Defendants have any merit, or that damages recoverable under the Action would not have exceeded the Gross Settlement Amount. Accordingly, neither this Settlement Agreement nor the Settlement nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or invalidity of any of Plaintiffs' Released Claims or Settling Defendants' Released Claims, or of any wrongdoing or liability or lack thereof of any of Plaintiffs' Releasees or Settling Defendants' Releasees; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission or lack thereof of any of Plaintiffs' Releasees or Settling Defendants' Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal. Plaintiffs' Releasees or Settling Defendants' Releasees may file the Settlement Agreement and/or the Final Approval Order in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, claim or issue preclusion, release, good-faith settlement, judgment bar, or reduction or any other similar defense or counterclaim. The Settling Parties and their counsel, and each of them, agree, to the extent permitted by law, that all agreements made relating to the confidentiality of information shall survive and be unaffected by this Settlement Agreement.

## Section 8    SETTLEMENT CONSIDERATION AND TERMS

8.1    *Gross Settlement Amount and Settlement Fund.*

8.1.1    No later than ten (10) business days following the Court's entry of the Final Approval Order, Class Counsel and/or the Settlement Administrator shall direct the Escrow Agent to establish an escrow account. The escrow account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this § 8.1.1, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be the Escrow Agent. No later than five (5) calendar days following the establishment of the escrow account, the Settlement Administrator shall provide Settling Defendants with the W-9 for the Settlement Fund.

8.1.2   In full settlement of the claims asserted in the Action against the Settling Defendants, and in consideration of the releases specified in § 4 above, within fifteen (15) business days after Effective Date of the Settlement or within fifteen (15) business days after the Settling Defendants receive the appropriate account information and instructions to process payment described in this § 8.1.2, whichever is later, the Settling Defendants shall pay and/or shall cause their insurance carrier to pay the Gross Settlement Amount to the Settlement Fund. Although the Settling Defendants' deny any fault, liability, or wrongdoing, the Settling Parties agree that the payment of the Gross Settlement Amount is intended as settlement of this Action for alleged breach of fiduciary duty claims against the Settling Defendants under ERISA, and that the Net Settlement Amount to be distributed to Class Members (after deduction of Administrative Expenses as provided below) shall be treated as a "restorative payment" within the meaning of Revenue Ruling 2002-45.

8.1.3   The Escrow Agent shall invest the Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

8.1.4   The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a Taxpayer Identification Number for the Settlement Fund and filing the returns described in Treas. Reg. § 1.468B-2(k)). Such returns as well as the election described in § 8.1.1 shall be consistent with this § 8 and, in all events, shall reflect that all taxes (as defined in § 8.1.5 below) (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Gross Settlement Amount as provided in § 8.1.5 hereof.

8.1.5   Taxes and tax expenses are Administrative Expenses under § 8.2 to be deducted and paid from the Gross Settlement Amount, including but not limited to: (1) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Gross Settlement Amount, and (2) all tax expenses and costs incurred in connection with the operation and implementation of this § 8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this § 8). Such taxes and tax expenses shall be Administrative Expenses under § 8.2.1 and shall be paid timely by the Escrow Agent out of the Gross Settlement Amount. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Settlement Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2));

neither the Settling Defendants, their counsel, nor Class Counsel are responsible nor shall they have any liability for the determination or payment therefor or any applicable reporting obligations. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this § 8.

8.1.6 The Escrow Agent shall not disburse the Settlement Fund or any portion thereof except as provided in this Settlement Agreement and as ordered by the District Court. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

8.1.7 Pending final distribution of the Net Settlement Amount in accordance with § 8.3, the Escrow Agent will maintain the Settlement Fund.

8.1.8 The Settling Defendants, their insurance carrier, the Settling Defendants' Releasees, the Plan, the Settling Defendants' counsel, and Class Counsel shall have no liability with respect to the monies maintained in the Settlement Fund (as defined in § 1.50), including, without limitation, any liability related to any fees, taxes (as defined in § 8.1.5), investment decisions, losses or value fluctuations, maintenance, supervision, or distributions of any portion of the Gross Settlement Amount.

8.1.9 Except as otherwise provided herein (including § 8.2.2.1), under no circumstances shall the Settling Defendants or their insurance carrier be required to pay, or cause to be paid, any amounts that exceed the Gross Settlement Amount specified in § 8.2. Upon payment of the Gross Settlement Amount and the amount set forth in § 8.2.2.1, all of the Settling Defendants' payment obligations under this Agreement shall be satisfied and discharged in full. To the extent the Gross Settlement Amount will be funded by insurance proceeds, for purposes of this Agreement, any such amounts shall be considered to have been paid by the Settling Defendants.

8.2 *Administrative Expenses Deductible from Settlement Fund.* The Settlement Fund shall be governed by the terms of this Settlement Agreement and any applicable orders of the District Court. Within forty-five (45) calendar days of the Effective Date, all Administrative Expenses approved by the Court shall be paid from the Settlement Fund. The following expenses shall be treated as Administrative Expenses deductible from the Settlement Fund: (a) all taxes and tax expenses as described in §§ 8.1.5 and 8.2.1; (b) all expenses of the Settlement Administrator and Escrow Agent, except for $127,642.47 of such expenses which are to be paid by CHS/, as described in § 8.2.2.2; and (c) any amounts for the Independent Fiduciary referred to in § 8.2.3.

8.2.1 *Taxes and Tax Expenses.* All taxes and tax expenses as described in § 8.1.5 shall be automatically deducted the Settlement Fund.

8.2.2 *Expenses of Settlement Administrator and Escrow Agent.*

8.2.2.1 In addition to the Gross Settlement Amount, within fifteen (15) business days after Effective Date of the Settlement or within fifteen

(15) business days after the Settling Defendants receive the appropriate account information and instructions to process payment described in § 8.1.2, whichever is later, the Settling Defendants shall pay, or cause their insurer to pay, $127,642.47 of the Settlement Administrator's expenses, representing the Settlement Administrator's expenses for Settlement Class Members who invested only in the Group B Investments.

8.2.2.2 All of the other costs and expenses of the Settlement Administrator, including but not limited to the printing and distribution of the Class Notice for Class Members who invested in the Group A Investments, calculation and distribution of the Net Settlement Fund, and establishment of the Settlement website and related telephone support, shall be deductible from the Settlement Fund. In addition, the expenses of the Escrow Agent shall be deductible from the Settlement Fund.

8.2.2.3 The expenses described in § 8.2.2.2 shall be advanced by Class Counsel until such time that the Settlement and the reasonableness of such expenses are approved by the Court.

8.2.3 *Independent Fiduciary Expenses*. All costs of the Independent Fiduciary are amounts chargeable to the Settlement Fund as Administrative Expenses. These expenses shall be advanced by Class Counsel until such time that the Settlement and the reasonableness of such expenses are approved by the Court.

8.3 *Net Settlement Fund and Plan of Allocation*. The balance of the Settlement Fund (inclusive of interest earned) after deduction of the taxes and expenses described in § 8.2 or other charges allowed against the Settlement Fund by order of the District Court shall be the "Net Settlement Fund." Payments to Settlement Class Members shall be calculated by the Settlement Administrator as follows, based on information provided by the Plan or its Recordkeeper, as described below.

8.3.1 CHS/ shall send or cause to be sent the names, last known addresses, Social Security numbers, account/plan information, account balance information described in § 8.3.2, and other pertinent information of the Settlement Class Members, as per the Plan's records, to the Settlement Administrator in electronic form. Any data required to be provided pursuant to this Section will be based upon currently existing records and shall be required only to the extent of the Settling Defendants' ability to identify Settlement Class Members and produce such data using commercially reasonable methods within the following timeframes: Settlement Class Members' account balance information described in § 8.3.2 will be provided within thirty (30) business days of the entry of the Final Approval Order. All remaining data described herein will be provided within thirty (30) business days or fewer after the District Court grants Plaintiffs' Motion for Preliminary Approval of Settlement

8.3.2   For each Settlement Class Member, the Settlement Administrator shall determine a *Settlement Allocation Score*. A *Settlement Allocation Score* shall be a Settlement Class Member's aggregate quarter-ending account balance invested in the Group A Investments from August 8, 2013 to October 16, 2020, weighted by the percentage of days in the quarter for partial quarters at the beginning and end of this period.[2]

8.3.3   The Settlement Administrator shall determine the total settlement payment available to each Settlement Class Member by calculating each such Settlement Class Member's pro rata share of the Net Settlement Fund based on his or her *Settlement Allocation Score* compared to the sum of the *Settlement Allocation Scores* for all Class Members. If the dollar amount of the settlement payment to a Former Participant is calculated by the Settlement Administrator to be less than $5.00, then that Former Participant's payment or pro rata share shall be zero for all purposes.

8.3.4   The aggregate of all Settlement Class Members' Entitlement Amounts may not exceed the Net Settlement Amount. In the event that the Settlement Administrator determines that aggregate monetary payment pursuant to the Plan of Allocation would exceed the Net Settlement Amount, the Settlement Administrator is authorized to make such pro rata changes as are necessary to ensure that the aggregate monetary payment pursuant to the Plan of Allocation does not exceed the Net Settlement Amount.

8.3.5   The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly comply with all applicable federal and state income tax reporting and disclosure obligations associated with all payments made from the Net Settlement Fund directly to (*i.e.*, not including any amounts transferred to the Plan of behalf of) any Active Participant, Inactive Participant, Former Participant (or the Beneficiary or alternate payee of any such participant), pursuant to the provisions of § 8).

8.4   *Payments to the Plan on Behalf of Active Participants and Inactive Participants*

8.4.1   Upon completing the calculation of each Settlement Class Member's Entitlement Amount, the Settlement Administrator shall provide Defendants' Counsel, Class Counsel, and the Recordkeeper information in a mutually agreeable format concerning each Active Participant's and each Inactive Participant's Entitlement Amount, and any other information requested by CHS/ or the Recordkeeper as necessary to effectuate this Article.

8.4.2   Within sixty (60) calendar days following the Effective Date, or thirty (30) days

---

[2] To the extent a Settlement Class Member invested in a Group A Investment during the Class Period, but did not have a quarter-ending balance in any such Group A Investment during the Class Period, the Settling Parties will utilize other data as feasible. The Settling Parties will cooperate in good faith to obtain the data necessary to calculate the Settlement Allocation Score for these individuals.

after completing the steps described in § 8.4.1 herein, whichever is later, and upon written notice to CHS/ and the Recordkeeper, the Settlement Administrator shall effect a transfer from the Settlement Fund to the Plan of all monetary payments payable to the Plan on behalf of the Active Participants and Inactive Participants. The Recordkeeper shall thereafter credit the individual Plan account of each Active Participant and Inactive Participant eligible for a distribution in an amount equal to that individual's Entitlement Amount.

8.4.3   Once transferred to the Plan, each Active Participant's and each Inactive Participant's Entitlement Amount shall be invested in accordance with and in proportion to such Participant's investment elections then on file for new contributions to his or her Plan account.  If the Active Participant or Inactive Participant does not have an investment election on file, then such individual shall be deemed to have directed payment of his or her Entitlement Amount to be invested in the Plan's qualified default investment alternative, as defined in 29 C.F.R. § 2550.404c-5. Once such Entitlement Amounts are allocated to the account of any Active or Inactive Participant, all such amounts will be subject to the terms and conditions applicable to all Plan accounts.

8.4.4   If, as of the date on which the Recordkeeper credits the individual Plan account of each Active Participant and Inactive Participant with his or her Entitlement Amount, an individual believed to be an Active Participant or an Inactive Participant no longer has a Plan account balance greater than $0.00, the Recordkeeper shall promptly create an account for the participant and credit the newly-created account with his or her Entitlement Amount.[3]  The Recordkeeper shall promptly transmit a list of such affected individuals to the Settlement Administrator, Class Counsel, and counsel for CHS/.  Once such Entitlement Amounts are allocated to the newly-created account, all such amounts will be subject to the terms and conditions applicable to all Plan accounts, except as set forth in § 8.4.4.2.

8.4.4.1   For accounts equal to or greater than $5,000, the participant will be treated as an Inactive Participant as set forth in § 8.4.3.

8.4.4.2   For accounts under $5,000, the account will be distributed to the participant through a forced cash-out pursuant to the terms and conditions applicable to all Plan accounts.  The $40 fee associated

---

[3] Upon receipt of the list described in § 8.4.1 setting forth the Settlement Class Members entitled to receive their Entitlement Amount through their Plan accounts, and prior to transferring the portion of the Net Settlement Fund attributable to Active and Inactive Participants to the Plan as provided in § 8.4.2, the CHS/ Defendants may request that the Recordkeeper generate a list of Active and Inactive Participants who have taken a full distribution of their Plan accounts such that they have become Former Participants.  The Settlement Administrator shall then retain these individuals' Entitlement Amounts and pay that amount as set forth in § 8.5 in lieu of transferring those funds to the Recordkeeper for payment through the Plan.

with this distribution will not be payable by the Settlement Class Member.

8.5 *Payments to Former Participants.*  Upon completing the calculation of each Settlement Class Member's Entitlement Amount and no later than sixty (60) calendar days following the Effective Date, the Settlement Administrator shall issue a check from the Settlement Fund to each Former Participant eligible for a distribution, in the amount of each Former Participant's Entitlement Amount (less any withholdings).

8.6 *Payments to Beneficiaries and Alternate Payees.*

8.6.1 Beneficiaries of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's Entitlement Allocation under this Section shall receive such settlement payments in the form of a check issued by the Settlement Administrator (less any withholdings).  Beneficiaries of Former Participants that are entitled to receive all or a portion of a Former Participant's Entitlement Allocation under this Article will receive such settlement by check in the amount of each Former Participant's Entitlement Amount (less any withholdings).

8.6.2 Alternate Payees of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's Entitlement Allocation under this Article shall receive such settlement payments pursuant to the terms of the applicable Qualified Domestic Relations Order. Alternate Payees of Former Participants that are entitled to receive all or a portion of a Former Participant's Entitlement Allocation under this Article will receive such settlement payments by check in the amount of each Former Participant's Entitlement Amount (less any withholdings).

8.6.3 The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries and Alternate Payees in accordance with the Plan of Allocation set forth in this Article and as ordered by the Court.

8.7 All checks issued in accordance with the Plan of Allocation shall be mailed to the address of each appropriate Settlement Class Member (or his or her Beneficiary or Alternate Payee) provided by the Recordkeeper in accordance with § 8.3.1 or any updated address obtained by the Settlement Administrator.

8.8 All checks issued in accordance with the Plan of Allocation shall expire no later than one hundred twenty (120) calendar days after their issue date.  All checks that are undelivered or are not cashed before their expiration date shall revert to the Settlement Fund, which limitation shall be printed on the face of each check.  The voidance of checks shall have no effect on Settlement Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in

full effect.

8.9 *Notice of Completion of Plan of Allocation*. Within ten (10) business days of completing all aspects of the Plan of Allocation, the Settlement Administrator shall provide written notice of its implementation of the Plan of Allocation to Class Counsel and the Settling Defendants' counsel. Such notice shall provide, in reasonable detail, a summary of the steps taken to implement the Plan of Allocation.

8.10 *Disbursement of undistributed monies from the Settlement Fund*. No sooner than one hundred and fifty (150) calendar days following the last date on which any check was mailed pursuant to §§ 8.5 through 8.7 herein, any portion of the Settlement Fund remaining after distributions, including costs and taxes, shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan.

8.11 *Oversight of Settlement Administration.*

8.11.1 Class Counsel shall retain responsibility for overseeing and directing the Settlement Administrator and Escrow Agent in accordance with the terms of the Settlement Agreement and orders of the District Court.

8.11.2 The Settling Defendants, their counsel, their insurance carrier, the Plan, and the Settling Defendants' Releasees shall have no liability for: (i) any act, omission, or determination of the Escrow Agent and/or the Settlement Administrator, or any of their respective designees or agents, in connection with administration of the Settlement; (ii) the drafting or approval of the Plan of Allocation; or (iii) the execution of the Plan of Allocation and any calculations or distribution of the Settlement payments to Settlement Class Members (including, without limitation, all tax determinations and tax reporting and disclosure obligations associated with such distributions), except for facilitating payments to Plan accounts as provided in § 8.4.

## Section 9    ADDITIONAL LIMITED DISCOVERY

9.1 In connection with Plaintiffs' claims against the Non-Settling Defendants relating to the Group B Investments, following the Effective Date of the Settlement, the Settling Defendants shall participate in limited discovery consisting of: (a) completing rolling productions of non-privileged, responsive ESI that was collected and reviewed in accordance with Plaintiffs' and the Settling Defendants' prior agreement as to the scope of the Settling Defendant's ESI review, as set forth in the Settling Defendants' May 5, 2020 letter to Plaintiffs; (b) updating the Settling Defendants' Responses and Objections to Plaintiffs' Requests for Production of Documents (Set One); and, (c) producing Roy Sellers for an oral or written deposition or, in the event that Mr. Sellers is unable to be deposed, producing Edward Lomicka or another agreed upon Person for a deposition. The Settling Defendants are under no obligation to collect any additional documents and/or produce a privilege log in connection with their prior or forthcoming productions

of documents.

**Section 10      TERMINATION OF THE SETTLEMENT AGREEMENT**

10.1   *Automatic Termination*.  This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

    10.1.1   If the District Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final; provided, however, that if the District Court declines to approve the Settlement for any reason, the Settling Parties shall negotiate in good faith to cure any deficiency identified by the District Court.

    10.1.2   If the District Court issues an order in the Action modifying the Settlement Agreement, and if within thirty-one (31) days after the date of any such ruling the Settling Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the District Court or by the Settling Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the order referenced in this § 10.1.2.

    10.1.3   If the Sixth Circuit reverses the District Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Settling Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Sixth Circuit or by the Settling Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first day after issuance of the Sixth Circuit order referenced in this § 10.1.3.

    10.1.4   If the Supreme Court of the United States reverses or remands a Sixth Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Settling Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Settling Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the Supreme Court order referenced in this § 10.1.4.

    10.1.5   If a Review Proceeding is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be terminated until Final resolution or dismissal of any such Review Proceeding, except by written agreement of the Parties.

10.2   *Optional Termination.*  The Settling Defendants shall have the right to withdraw from

this Settlement and terminate the Agreement if:

10.2.1 On or before fourteen (14) calendar days before the Court's final fairness hearing, the United States Department of Labor files any objection to the Settlement in any court, initiates a claim against any Releasees relating to the Released Claims, or notifies any Releasee that it intends to file such a Claim; or

10.2.2 The Independent Fiduciary fails to approve the Settlement as set forth in § 3.4 on or before thirty (30) calendar days prior to the Fairness Hearing.

10.3 *Consequences of Termination of the Settlement Agreement*. In the event that the Settlement is terminated pursuant to §§ 10.1 or 10.2 of this Agreement, then (a) the Settlement proposed herein shall be of no further force and effect; (b) the agreements and stipulations in this Settlement Agreement concerning class definition or class certification will not be used as evidence or argument to support class definition or class certification, and the Settling Defendants will retain all rights to oppose class certification; and (c) this Settlement Agreement and all negotiations, proceedings, and statements relating thereto, and any amendment thereof, shall be null and void, shall not be submitted or admitted in the Action or any other proceeding, and shall be without prejudice to any party hereto, and each Settling Party shall be restored to his, her, or its respective position as it existed prior July 29, 2020.

## Section 11     MISCELLANEOUS PROVISIONS

11.1 *Jurisdiction*. The District Court shall retain jurisdiction over all Settling Parties, the Settlement Class, the Action, and this Settlement Agreement to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in § 3 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement, and no Settling Party shall oppose the reopening and reinstatement of the Action on the Court's active docket for the purposes of effecting this § 11.1.

11.2 *No Limitation of Remedies*. In the event that the Settling Defendants breach this Settlement Agreement, Plaintiffs will continue to have any and all remedies for such breach. In the event that Plaintiffs, the Settlement Class, or the Plan breach this Settlement Agreement, Settling Defendants will continue to have any and all remedies for such breach.

11.3 *Governing Law*. This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Tennessee law will apply without regard to conflict of law principles.

11.4 *Severability*. The provisions of this Settlement Agreement are not severable.

11.5 *Amendment*. Any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties, and any such modifications must be approved by the District Court

in order to become effective.

11.6 *Waiver*.  The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Settling Party.  The waiver by any Settling Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach of this Settlement Agreement, whether prior, subsequent, or contemporaneous with this Settlement Agreement.

11.7 *Construction*.  None of the Settling Parties shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against a drafter.

11.8 *Principles of Interpretation*.  The following principles of interpretation apply to this Settlement Agreement:

11.8.1 *Headings*.  The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

11.8.2 *Singular and Plural*.  Definitions apply to the singular and plural forms of each term defined.

11.8.3 *Gender*.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

11.8.4 *References to a Person*.  References to a Person are also to the Person's permitted successors and assigns.

11.8.5 *Terms of Inclusion*.  Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

11.9 *Further Assurances*.  Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

11.10 *Survival*.  All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

11.11 *Notices*.  Any notice, demand, or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by

confirmed facsimile, or delivered by reputable express overnight courier:

A.    IF TO NAMED PLAINTIFFS:

Paul J. Lukas
Kai H. Richter
NICHOLS KASTER, PLLP
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Fax: (612) 338-4878

B.    IF TO THE SETTLING DEFENDANTS:

Howard Shapiro
Stacey C.S. Cerrone
JACKSON LEWIS P.C.
650 Poydras Street, Suite 1900
New Orleans, LA 70130
Fax: (504) 208-1759

C.    IF TO CHS/:

Justin Pitt
Senior Vice President and Chief Litigation Counsel
CHSPSC, LLC
4000 Meridian Blvd
Franklin, TN 37064
Fax: (615) 373-9704

With a copy to:

Howard Shapiro
Stacey C.S. Cerrone
JACKSON LEWIS P.C.
650 Poydras Street, Suite 1900
New Orleans, LA 70130
Fax: (504) 208-1759

Any Settling Party may change the address at which it is to receive notice by written notice delivered to the other Settling Parties in the manner described above.

11.12  *Entire Agreement*.  This Settlement Agreement contains the entire agreement among the Settling Parties relating to the settlement of the Action.  It specifically supersedes any settlement terms or settlement agreements relating to Settling Defendants that were previously agreed upon orally or in writing by any of the Settlement Parties, including any and all discussions, representations, warranties, or the like, prior to the Effective Date of Settlement.

11.13  *Counterparts*.  This Settlement Agreement may be executed by exchange of faxed or emailed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

11.14  *Binding Effect*.  This Settlement Agreement binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors and Successors-in-Interest.

11.15  *Arm's-Length Negotiations.*  The Settling Parties represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel, that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel.  Each Settling Party assumes the risk of mistake as to facts or law.  None of the Settling Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

## [SIGNATURES ON FOLLOWING PAGES]

*FOR PLAINTIFFS AND THE SETTLEMENT CLASS*

Dated this the 4th day of December, 2020.

By: _____

**NICHOLS KASTER, PLLP**
Kai H. Richter
Paul J. Lukas
Carl F. Engstrom
Brock J. Specht
Jacob T. Schutz
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
krichter@nka.com
lukas@nka.com
cengstrom@nka.com
bspecht@nka.com
jschutz@nka.com

**BARRETT JOHNSTON MARTIN & GARRISON, LLC**
Jerry Martin, TN BPR No. 20193
David Garrison, TN BPR No. 24968
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
jmartin@barrettjohnston.com
dgarrison@barrettjohnston.com

*Class Counsel*

*FOR THE SETTLING DEFENDANTS*

Dated this the 4th day of December, 2020.

By: _____

**JACKSON LEWIS P.C.**
Stacey C.S. Cerrone
Howard Shapiro
Lindsey Chopin
650 Poydras Street, Suite 1900
New Orleans, Louisiana 70130
Telephone: (504) 208-1755
Facsimile: (504) 208-1759
Stacey.Cerrone@jacksonlewis.com
Lindsey.Chopin@jacksonlewis.com
Howard.Shapiro@jacksonlewis.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
George H. Cate, III
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, TN 37203
Telephone: (615) 244-2582
gcate@bradley.com

*Attorneys for the Settling Defendants*

# EXHIBIT A

**If you are currently a participant in the
CHS/Community Health Systems, Inc. Retirement Savings Plan or
were a participant in the Plan at any time from August 8, 2013 to
[Date of Preliminary Approval Order] and invested in certain
Disputed Investments in the Plan, you are a part of a class action
settlement.**

IMPORTANT
PLEASE READ THIS NOTICE CAREFULLY
THIS NOTICE RELATES TO THE PENDENCY OF A CLASS ACTION LAWSUIT AND, IF YOU ARE A
SETTLEMENT CLASS MEMBER, CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS TO
OBJECT TO THE SETTLEMENT

*A Federal Court authorized this notice. You are not being sued.
This is not a solicitation from a lawyer.*

- A partial Settlement has been reached in a class action lawsuit against the Retirement Committee of CHS/Community Health Systems, Inc. and CHS/Community Health Systems, Inc. ("CHS/") (together, "Settling Defendants"). The class action lawsuit involves whether or not the Settling Defendants and other defendants complied with their duties under the Employee Retirement Income Security Act of 1974 ("ERISA") in managing the CHS/Community Health Systems, Inc. Retirement Savings Plan (the "Plan"), including its predecessor plans (the Rockwood Clinic 401(k) Plan, the Health Management Associates, Inc. Retirement Savings Plan, the Mat-Su Regional Medical Center 401(k) Plan, and the CHS/Community Health Systems, Inc. 401(k) Plan, insofar as participant accounts in these predecessor plans were transferred to the Plan or would have been transferred to the Plan had the participant not terminated participation in the Plan prior to the transfer to the Plan).

- You are included as a Settlement Class Member if you are currently a Plan participant, or if you were a Plan participant at any time from August 8, 2013 to [Date of Preliminary Approval Order] (the "Class Period") and invested in the suite of Retirement Target Date separate accounts managed by Principal or the standalone Principal Large Cap S&P 500 Index fund, Principal MidCap S&P 400 Index fund, or Principal SmallCap S&P 600 Index fund offered in the Plan (the "Disputed Investments").

- The Settling Defendants have agreed to pay $580,000 into a Qualified Settlement Fund. Settlement Class Members who invested in the standalone Principal Large Cap S&P 500 Index fund, Principal MidCap S&P 400 Index fund, or Principal SmallCap S&P 600 Index fund offered in the Plan ("Standalone Index Funds") are eligible to receive a pro rata share of the amount in the Settlement Fund remaining after payment of Settlement Administrative Expenses. The amount of each Settlement Class Member's payment is based on a Plan of Allocation based on each Settlement Class Member's investment in the Standalone Index Funds. Payments to Active and Inactive Plan participants will be deposited into their respective Plan accounts. Payments to Former Plan participants will be made directly to Former Plan participants by check. Settlement Class Members who invested in the suite of Retirement Target Date separate accounts managed by Principal in the Plan ("TDSAs") will preserve their claim against the Principal Defendants relating to the TDSAs, but will not be separately compensated by the Settling Defendants based on their investment in the TDSAs. The Settling Defendants have agreed to provide certain further discovery related to the remaining claim against the Principal Defendants relating to the management of the TDSAs.

- Please read this notice carefully. Your legal rights are affected whether you act, or don't act.

| THIS TABLE CONTAINS A SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **OBJECT BY [DATE]** | You may write to the Court if you don't like the Settlement to explain why you object. |
| **ATTEND A HEARING** | You may ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | You will get a share of the Settlement benefits to which you are entitled and will give up your rights to sue the Settling Defendants about the allegations in this case. |

## BASIC INFORMATION

### 1. What is this notice and why should I read it?

A court authorized this notice to let you know about a proposed partial settlement of a class action lawsuit called *Kirk, et al. v. Retirement Committee of CHS/Community Health Systems, Inc., et al.*, M.D. Tenn., Civil Action No. 3:19-cv-00689 (the "Action"), brought on behalf of the Settlement Class Members, and pending in the United States District Court for the Western District of Tennessee. You need not live in Tennessee to get a benefit under the Settlement. This notice describes the Settlement. Please read this notice carefully. Your rights and options—**and the deadlines to exercise them**—are explained in this notice. Please understand that if you are a Settlement Class Member, your legal rights are affected regardless of whether you act.

### 2. What is a class action lawsuit?

A class action is a lawsuit in which one or more plaintiffs—in this case three former Plan participants ("Plaintiffs")—sue on behalf of a group of people who allegedly have similar claims. After the Settling Defendants and Plaintiffs reached an agreement to partially settle this case, the Court granted preliminary approval of the Settlement and preliminarily determined that the case should be treated as a class action for settlement purposes. Among other things, this preliminary approval permits Settlement Class Members to comment on the Settlement before the Court makes a final determination as to whether to approve the Settlement. In a class action, the Court resolves the issues for all class members.

## THE CLAIMS IN THE LAWSUIT AND THE SETTLEMENT

### 3. What is this lawsuit about?

Plaintiffs allege that the Settling Defendants breached their fiduciary duties by including three overpriced and underperforming investment options in the Plan and by failing to monitor Principal Life Insurance Company and related entities' management of the suite of Retirement Target Date separate accounts. A more complete description of what Plaintiffs allege is in the Complaint, which is available on the Settlement Website at [ ].

The Settling Defendants deny Plaintiffs' claims of wrongdoing or liability against them and assert that their conduct was lawful. The Settling Defendants are settling the Action solely to avoid the expense, inconvenience, and inherent risk and disruption of litigation.

## 4. Why is there a Settlement?

Plaintiffs filed this Action in August 2019, and the Settling Defendants moved to dismiss the Action in October 2019. That motion remains pending. Plaintiffs and the Settling Defendants have also engaged in extensive discovery. Instead of continuing Plaintiffs' case against the Settling Defendants, both sides agreed to a Settlement. That way, both sides avoid the cost and risk of additional court proceedings, and the affected current and former Plan participants will get substantial benefits that they would not have received if Plaintiffs had litigated their claims against the Settling Defendants and lost. The Plaintiffs and their attorneys believe the Settlement is in the best interests of the Settlement Class Members.

Plaintiffs have not settled their claims against Principal Life Insurance Company, Principal Management Corporation, or Principal Global Investors, LLC (the "Principal Defendants") related to their management of the suite of Retirement Target Date separate accounts in the Plan, and the Settlement Agreement specifically excludes Plaintiffs' claims against the Principal Defendants. The Action will continue against the Principal Defendants once the partial Settlement is Effective, and as part of the Settlement, the Settling Defendants will participate in additional, agreed-upon discovery in this Action relating to Plaintiffs' ongoing claims against the Principal Defendants.

# WHO'S INCLUDED IN THE SETTLEMENT?

## 5. How do I know if I am in the Settlement Class?

Everyone who falls within the following group is a member of the **Settlement Class**:

> All current and former participants in the Plan who had an account balance greater than $0.00 in the Disputed Investments at any point during the Class Period and their beneficiaries.

The Class Period is August 8, 2013 to [date of Preliminary Approval Order], and the Disputed Investments are the suite of Retirement Target Date separate accounts managed by Principal and the standalone Principal Large Cap S&P 500 Index fund, Principal MidCap S&P 400 Index fund, and Principal SmallCap S&P 600 Index fund offered in the Plan. If you meet the definition above, you are a member of the Settlement Class.

# THE SETTLEMENT BENEFITS

## 6. What does the Settlement provide?

The Settling Defendants have agreed to pay $580,000 into a Qualified Settlement Fund to resolve the claims of Settlement Class Members. The Net Settlement Amount (after deduction of any Court-approved expenses associated with administering the Settlement) will be allocated to Settlement Class Members according to the Plan of Allocation set forth in the Settlement Agreement. Under the Plan of Allocation, monies will be distributed to Settlement Class Members pro rata based on their investments in the Standalone Index Funds. Settlement Class Members who invested in the TDSAs will preserve their claim against the Principal Defendants relating to the TDSAs but will not be separately compensated by the Settling Defendants based on their investment in the TDSAs. The Settling Defendants have agreed to provide certain further discovery related to the remaining claim against the Principal Defendants relating to the management of the TDSAs.

If you are a Settlement Class Member (see Question No. 5) and you are a Plan participant with an account balance in the Plan (or you are a Beneficiary of such a Settlement Class Member), any payment to which you are entitled will be deposited into your Plan account in accordance with your

investment elections for new contributions. If you have not made any such elections, your payment will be invested in the Plan's qualified default investment alternative. If you are an Alternate Payee of a current Plan participant pursuant to a Qualified Domestic Relations Order, your portion of the Settlement will be distributed pursuant to the terms of that Order.

If you are a Settlement Class Member and you *previously* participated in the Plan but no longer have an account balance in the Plan (or you are a Beneficiary or an Alternate Payee of such a Settlement Class Member), then you will receive a payment under the Settlement directly in the form of a check. If the dollar amount of the Settlement payment to a Former Participant is calculated by the Settlement Administrator to be less than $5.00, then that Former Participant's payment or pro rata share shall be zero for all purposes.

## HOW TO GET BENEFITS

| 7. How do I get benefits? |
|---|

Settlement Class Members do not have to submit claim forms in order to receive Settlement benefits. The benefits of the Settlement will be distributed automatically once the Court approves the Settlement, either to eligible Settlement Class Members' Plan accounts (for current Plan participants) or by check (for former Plan participants). (See Question No. 6.)

If you are eligible for a payment and were a current participant in the Plan as of [date of Preliminary Approval Order], but no longer have a Plan account balance greater than $0.00 when the Settlement is distributed to Settlement Class Members, you will either receive a check from the Settlement Administrator or the Recordkeeper will create a Plan account for you and credit the newly-created account with your Settlement payment. For accounts under $5,000, the account will be distributed through a forced cash-out.

| 8. When will I get my payment? |
|---|

If you are a current Plan participant and invested in the Standalone Index Funds, then you will receive your pro rata share of the $580,000 in the form of a deposit into your Plan account effective approximately 60 days after the Settlement has received final approval and becomes Effective (subject to your maintaining an account balance greater than $0.00 at the time of distribution, see Question No. 7). The hearing to consider the final fairness of the Settlement is scheduled for [Fairness Hearing, 2021]. Any Alternate Payees of current Plan Participants will also receive their Settlement payment within approximately 60 days of the Effective Date of the Settlement, in accordance with the terms of their Qualified Domestic Relations Order.

If you are a former Plan participant (or a Beneficiary or Alternate Payee of such participant) and invested in the Standalone Index Funds, a check will be issued to you within approximately 60 days after the Settlement has received final approval and becomes effective. All checks will expire and become void 120 days after they are issued, if they have not been cashed.

These Settlement payments may have certain tax consequences; you should consult your tax advisor.

## THE LAWYERS REPRESENTING YOU

| 9. Who represents the Settlement Class? |
|---|

For purposes of the Settlement, the Court has appointed lawyers from the law firm of Nichols Kaster, PLLP and Barrett Johnston Martin & Garrison, LLC as Class Counsel. If you want to be represented

by your own lawyer, you may hire one at your own expense. In addition, the Court appointed Plaintiffs Becky Kirk, Perry Ayoob, and Dawn Karzenoski, to serve as the Class Representatives. They are also Settlement Class Members.

## 10. How will the lawyers be paid?

Class Counsel is not seeking any attorneys' fees as a result of this partial Settlement. The only expenses that will be deducted from the Settlement Fund are the administrative expenses associated with Settlement Class Members who invested in the Standalone Index Funds and are eligible for a distribution. The Settling Defendants have agreed to pay the portion of the administrative expenses associated with Settlement Class members who invested only in the TDSAs.

# YOUR RIGHTS AND OPTIONS

## 11. What is the effect of final approval of the Settlement?

If the Court grants final approval of the Settlement, a final order and judgment dismissing the Plaintiffs' claims against the Settling Defendants will be entered in the Action. Payments under the Settlement will then be processed and distributed. The Release by Settlement Class Members will also take effect. All members of the Settlement Class will release and forever discharge the Settling Defendants and each of the Settling Defendants' Releasees from any and all Plaintiffs' Released Claims (as defined in the Settlement Agreement). These claims include all claims relating to the Disputed Investments that were brought in the Action or could have been brought in the Action against the Settling Defendants and each of the Settling Defendants' Releasees. Claims against the Principal Defendants are not released. Please refer to Paragraphs 1.40, 1.53 and 4.1 of the Settlement Agreement for a full description of the claims and persons that will be released upon final approval of the Settlement. A copy of the Settlement Agreement is available on the Settlement Website at [ ].

No Settlement Class Member will be permitted to continue to assert Plaintiffs' Released Claims in any other litigation against the Settling Defendants or the other persons and entities covered by the Release. If you object to the terms of the Settlement Agreement, you may notify the Court of your objection. (See Table on page 1 of this Notice.) If the Settlement is not approved, the Action will proceed against all Defendants as if no settlement had been attempted or reached.

If the Settlement is not approved and the Action resumes, there is no guarantee that members of any Settlement Class will recover more than is provided for under the Settlement, or anything at all.

## 12. What happens if I do nothing at all?

If you do nothing, you will release any claims you may have against Settling Defendants or the Settling Defendants' Releasees concerning the conduct Plaintiffs allege in their complaint. (See Question No. 11.) You may also receive a Settlement payment as described in Question No. 6. You will not release any claims you may have against the Principal Defendants.

## 13. How do I get out of the Settlement?

If the Court approves the Settlement, you will be bound by it and will receive whatever benefits you are entitled to under its terms. You cannot exclude yourself from the Settlement, but you may notify the Court of your objection to the Settlement. (See Question No. 15.) If the Court approves the Settlement, it will do so under Federal Rule of Civil Procedure 23(b)(1), which does not permit Settlement Class Members to opt out of the Class.

## 14. Can I sue CHS/Community Health Systems, Inc. for the same thing later?

No.  If the Court approves the Settlement, you will have given up any right to sue CHS/Community Health Systems, Inc. for the claims being resolved by this Settlement.

| **15. How do I object to the Settlement?** |
| --- |

You can object to the Settlement if you don't like any part of it. If you object, you must give the reasons why you think the Court should not approve the Settlement. The Court will consider your views. Your objection to the Settlement must be postmarked no later than [OBJECTION DEADLINE, 2020] and must be sent to the Court and the attorneys for the Parties at the addresses below:

| Court | Class Counsel | CHS/ Defendants' Counsel |
| --- | --- | --- |
| Clerk of the Court United States District Court Middle District of Tennessee Estes Kefauver Federal Building & Courthouse 801 Broadway Nashville, TN 37203 | Kai Richter NICHOLS KASTER, PLLP 4700 IDS Center 80 S 8th Street Minneapolis, MN 55402 | Stacey C.S. Cerrone Lindsey Chopin JACKSON LEWIS P.C. 650 Poydras Street, Suite 1900 New Orleans, LA 70130 |

The objection must be in writing and should include the case name *Kirk, et al. v. Retirement Committee of CHS/Community Health Systems, Inc., et al., M.D. Tenn., Civil Action No. 3:19-cv-00689*; as well as include your (a) name; (b) address; (c) a statement that you are a member of the Settlement Class; (d) the specific grounds for the objection (including all arguments, citations, and evidence supporting the objection); (e) all documents or writings that you desire the Court to consider (including all copies of any documents relied upon in the objection); (f) your signature; and (g) a notice of intention to appear at the Fairness Hearing (if applicable).  (If you are represented by counsel, you or your counsel may file your objection through the Court's CM/ECF system.)  The Court will consider all properly filed comments from Settlement Class Members.  If you wish to appear and be heard at the Fairness Hearing in addition to submitting a written objection to the Settlement, you or your attorney should say so in your written objection.

Class Counsel will file with the Court their request for Administrative Expenses and post it on the Settlement Website in advance of the deadline for objections.

# THE COURT'S FAIRNESS HEARING

| **17. When and where will the Court hold a hearing on the fairness of the Settlement?** |
| --- |

A Fairness Hearing has been set for [DATE] at [TIME], before The Honorable  William L. Campbell, Jr. at the Estes Kefauver Federal Building & Courthouse 801 Broadway, Nashville, TN 37203 in [COURTROOM].  During the hearing, the Court will hear any comments, objections, and arguments concerning the fairness of the proposed Settlement, including the amount requested by Class Counsel for Settlement Administrative Expenses.   You do not need to attend this hearing.  You also do not need to attend to have an objection considered by the Court.  (See Question No. 15.)

**Note:**  The date, format and time of the Fairness Hearing are subject to change by Court Order, including setting a virtual or telephonic hearing in lieu of an in person hearing in light of the COVID-19 pandemic.  Any changes to the hearing date, format, or time will be posted at [www.[website].com].

**18. Do I have to attend the Fairness Hearing?**

No. Class Counsel will answer any questions the Court may have. But you are welcome to attend at your own expense. If you send an objection, you don't have to attend the Fairness Hearing to talk about it. As long as any written objection you choose to make was filed and mailed on time and meets the other criteria described in the Preliminary Approval Order, the Court will consider it. You may also pay another lawyer to attend, but you don't have to.

**19. May I speak at the hearing?**

You may ask the Court for permission to speak at the hearing concerning any part of the proposed Settlement by following the instructions in Question No. 15 above.

## GETTING MORE INFORMATION

**20. Where can I get additional information?**

This Class Notice provides only a summary of the matters relating to the Settlement. For more detailed information, you may wish to review the Settlement Agreement. You can view the Settlement Agreement and get more information at [WWW.WEBSITE.COM]. You can also get more information by writing to the Settlement Administrator at [ ] or calling toll-free [ ]. The Agreement and all other pleadings and papers filed in the case are available for inspection and copying during regular business hours at the office of the Clerk of the U.S. District Court located at the Estes Kefauver Federal Building & Courthouse, 801 Broadway, Nashville, TN 37203.

**PLEASE DO NOT CONTACT THE COURT, THE JUDGE, OR CHS/ WITH QUESTIONS ABOUT THE SETTLEMENT.**